638 S.E.2d 45

Barry CARSON, Respondent,

v.

SOUTH CAROLINA DEPARTMENT OF NATURAL
RESOURCES, Petitioner.

No. 2002–MO–044.

Supreme Court of South Carolina.

Heard April 17, 2002.
Decided May 20, 2002.

Charles T. Speth, II, of Haynsworth, Baldwin, Johnson & Greaves, L.L.C., of Columbia, and D. Christopher Lauderdale, of Haynsworth, Baldwin, Johnson & Greaves, L.L.C., of Greenville, for petitioner.

John A. O'Leary, of O'Leary & Associates, P.A.; and John S. Nichols, of Bluestein & Nichols, L.L.C., both of Columbia, for respondent.

PER CURIAM:

This is a state employee grievance matter. Petitioner South Carolina Department of Natural Resources (DNR) terminated Respondent Barry Carson (Carson) from its employment. The Court granted a writ of certiorari to review the decision of the Court of Appeals holding Carson was improperly discharged. *Carson v. South Carolina Dep't of Natural Resources*, Op. No. 2000–UP–054 (S.C. Ct.App. filed January 27, 2000). We reverse.

## FACTS

In September 1991, someone threw roofing tacks on then DNR Captain Frank Weeks' driveway causing damage to his personal and State vehicles. Weeks reported the incident to the Sheriff's Department, but no suspect was identified.

In September 1995, Weeks received an anonymous telephone call. The caller reported DNR Captain Carson and Deputy Law Enforcement Officer Mark Behr as the perpetrators. In addition, the caller stated Corporal Rusty Collier had information about the tack-throwing incident. At the time of the tack-throwing incident, Weeks was Carson's supervisor.

DNR conducted an internal investigation. Behr admitted he and Carson threw the roofing tacks. Collier stated, on the night of the incident, Carson asked him to participate in the

tack-throwing, but Collier declined. The following day, Carson indicated to Collier he had thrown the tacks.[1] Carson repeatedly denied any involvement in the tack-throwing.

As a result of the investigation, Colonel Mark Huguley, DNR's Deputy Director for Law Enforcement, determined Carson lied to him during several meetings in which they discussed Carson's participation in the tack-throwing incident. According to the Colonel, Carson's denial that he participated in the tack-throwing was untruthfulness constituting insubordination. Colonel Huguley recommended Carson be terminated.[2] In April 1996, DNR's director fired Carson "for reason of improper conduct and insubordination because of lack of candor." [3]

DNR's 1994 "Standards of Disciplinary Actions" provide a range of sanctions from written reprimand to termination for first offense insubordination. For first offense improper conduct, the "Standards" provide a range of discipline from oral reprimand to demotion. It is undisputed Carson had no reprimands or any other disciplinary problems during his twenty-four year employment with DNR.

The Court of Appeals determined lack of candor does not constitute insubordination. Accordingly, the Court of Appeals determined Carson was improperly discharged. *Id.*

## ISSUES

I. Did the Court of Appeals err by disregarding Colonel Huguley's testimony he told Carson to be truthful in the performance of his duties and, therefore, Carson was insubordinate by violating this instruction in denying participation in the tack-throwing incident?

II. Did the circuit court err by affirming the State Employee Grievance Committee's decision because that deci-

---

1. As a result of the investigation, Behr lost his DNR commission and Collier was reprimanded.

2. Colonel Huguley testified he would not have recommended termination if Carson had been truthful about his involvement in the tack-throwing incident.

3. DNR asserts the improper conduct was Carson's participation in the tack throwing.

sion was rendered through the denial of procedural due process?

III. Did the circuit court err by upholding the State Employee Grievance Committee's decision where DNR's actions constituted "investigative misconduct?"

## DISCUSSION

■ Decisions by the State Employee Grievance Committee (Committee) are controlled by South Carolina Code Ann. § 8-17-340(E) (Supp.2001). Appeals from the Committee are governed by the Administrative Procedures Act.[4] *South Carolina Dep't of Mental Retardation v. Glenn,* 291 S.C. 279, 353 S.E.2d 284 (1987). An appellate court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. § 1-23-380(A)(6) (Supp. 2001); *see South Carolina Dep't of Mental Retardation v. Glenn, supra.*

### I.

At the Committee hearing, Colonel Huguley testified, after his appointment as Chief Law Enforcement Officer in January 1996, he conducted meetings in all nine DNR districts and informed the officers, including Carson, "one fatal flaw in their employment would be lying, or not being truthful in their responsibilities." Shortly thereafter, he became involved in the investigation of the tack-throwing incident. The Court of Appeals did not recount this testimony.

DNR argues the Court of Appeals overlooked Colonel Huguley's testimony that he instructed Carson, as he had all DNR officers, to be truthful and, therefore, Carson violated this order when he denied his participation in the tack-throwing incident. In essence, DNR claims Carson violated his superior's order to be truthful and was, therefore, insubordinate and properly terminated.

■ Insubordination is defined as "1. [a] willful disregard of an employer's instructions .... 2. An act of disobedience to proper authority; esp., a refusal to obey an order that a

4. *See* S.C.Code Ann. §§ 1-23-10 *et seq.* (1986 & Supp. 2001).

superior officer is authorized to give." BLACK'S LAW DICTIO-NARY 802 (7th ed. 1999). It is "generally held to import a wilful or intentional disregard of the lawful and reasonable instructions of the employer." *Porter v. Pepsi–Cola Bottling Co. of Columbia,* 247 S.C. 370, 374, 147 S.E.2d 620, 622 (1966). In discussing insubordination, the *Porter* Court quoted with approval the following language from American Jurisprudence:

> Among the fundamental duties of the employee is the obligation to yield obedience to all reasonable rules, orders, and instructions of the employer, and wilful or intentional disobedience thereof, as a general rule, justifies a recission [sic] of the contract of service and the peremptory dismissal of the employee, *whether the disobedience consists in a disregard of the express provisions of the contract, general rules or instructions, or particular commands. . . .*

*Id.*

■ The Committee found Colonel Huguley met with all DNR officers, including Carson, shortly after his appointment to the agency. During the meetings, the Colonel "emphasized the need for integrity and truthfulness . . .". This finding is supported by the evidence in the record and, therefore, the Court may not substitute its judgment on this finding. § 1–23–380(A)(6); *South Carolina Dep't of Mental Retardation v. Glenn, supra* (where evidence supported Committee's decision employee had not committed misconduct, circuit court erred by reversing decision). The Committee further determined Carson participated in the tack-throwing incident. This factual decision is likewise supported by the evidence in the record and, therefore, the Court may not substitute its judgment on this finding. § 1–23–380(A)(6); *South Carolina Dep't of Mental Retardation v. Glenn, supra.* Finally, the Committee determined Carson was not truthful with Colonel Huguley when Carson denied his participation in the tack-throwing incident. This factual determination is also supported by the evidence of record and the Court must affirm the finding. § 1–23–380(A)(6); *South Carolina Dep't of Mental Retardation v. Glenn, supra.*

Under the circumstances, Carson's dishonesty constituted insubordination. As recognized by the Committee, within

weeks of the tack-throwing investigation, Colonel Huguley warned all DNR officers, including Carson, that lying would impair their positions with the agency.[5] Nevertheless, during the investigation, Carson repeatedly denied his participation in the tack-throwing incident even though provided with several opportunities to admit his involvement to Colonel Huguley. Under these circumstances, Carson's failure to be truthful in spite of prior instructions from his superior to be honest was insubordination. *See Porter v. Pepsi–Cola Bottling Co. of Columbia, supra* (insubordination is the willful or intentional disobedience of an employer's general rules or instructions). The Court of Appeals erred by not considering Colonel Huguley's instruction to his officers to be truthful and by failing to uphold the lower court's conclusion of insubordination.

## II.

Carson argues the circuit court erred by affirming the Committee's decision as that decision was rendered though the denial of procedural due process. Specifically, Carson claims he was denied due process because 1) the charges were vague and four years old, 2) DNR's procedure shifted the burden of proof to him, and 3) the Committee refused to hear from his character witnesses and limited the examination of other witnesses. We disagree.

Carson's first two claims are not preserved for appellate review. Although he commented during closing argument before the Committee that it was difficult to defend against an incident which occurred years earlier and mentioned, in passing, that the burden of proof appeared to be on the employee, Carson never claimed these difficulties amounted to a violation of procedural due process. Moreover, he never asked for nor obtained a ruling on these claims. Accordingly, these issues are not preserved for appellate review. *See Brown v. South Carolina Dep't of Health & Envtl. Control*, 348 S.C. 507, 560 S.E.2d 410 (2002) (issues not raised to and ruled on by agency are not preserved for judicial consideration); *Kiawah Resort Assoc. v. South Carolina Tax Comm'n*, 318 S.C. 502, 458 S.E.2d 542 (1995) (same).

---

5. In its brief to the Court of Appeals, Carson characterized Colonel Huguley's meetings throughout the DNR districts as his "truth tour."

■ Carson's claim the Committee refused to allow him to present character witnesses and limited the testimony of other witnesses, thereby violating his right to due process, is not preserved for review. Carson failed to proffer the character witnesses and the excluded testimony of the other witnesses at the Committee hearing. Accordingly, this issue is not preserved for appellate review. *State v. Cabbagestalk*, 281 S.C. 35, 314 S.E.2d 10 (1984) (failure to make an offer of proof precludes consideration of an issue on appeal); *State v. Roper*, 274 S.C. 14, 260 S.E.2d 705 (1979) (a reviewing court may not consider error alleged in the exclusion of testimony unless the record on appeal shows fairly what the rejected testimony would have been). Furthermore, without a proffer, the Court is unable to determine whether Carson suffered prejudice from the Committee's evidentiary rulings. *TNS Mills, Inc. v. South Carolina Dep't of Revenue*, 331 S.C. 611, 503 S.E.2d 471 (1998) (where there was no proffer of excluded testimony, the court was unable to determine whether complaining party was prejudiced by the refusal to admit the testimony into evidence).

### III.

In its brief to the Court of Appeals, Carson argued DNR's disciplinary action was the result of "investigative misconduct" and, therefore, the circuit court erred by affirming the Committee's decision upholding the disciplinary action. Specifically, he asserts that, although DNR's investigators were aware Carson was represented by counsel, they nonetheless questioned him in violation of the Sixth Amendment to the United States Constitution. In addition, Carson claims his statements to Colonel Huguley were made in violation of *Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). We disagree.

■ First, although he was represented by counsel, Carson had not been charged with any crime at the time DNR conducted its internal investigation. Accordingly, the Sixth Amendment right to counsel had not attached. *McNeil v. Wisconsin*, 501 U.S. 171, 176, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991) (Sixth Amendment right to counsel attaches when adversarial judicial proceedings have been initiated and at all

critical stages); *State v. Owens*, 346 S.C. 637, 552 S.E.2d 745 (2001) (Sixth Amendment right attaches only "post-indictment," at least in the questioning/statement area). DNR did not violate Carson's Sixth Amendment right to counsel by questioning him even though he was represented by counsel.

Second, Carson claims his statements to Colonel Huguley were coerced in violation of the Fifth Amendment to the United States Constitution because he was required either to answer the questions, and thereby incriminate himself in a criminal prosecution, or to refuse to answer and forfeit his job. Carson relies on *Garrity v. New Jersey, supra.*

In *Garrity,* police officers were under investigation for "fixing" traffic tickets. Prior to questioning, they were warned 1) their statements could be used against them in criminal proceedings, 2) they had the privilege to refuse to answer if the disclosure would tend to incriminate them, and 3) if they refused to answer, they would be removed from office. The officers answered the questions and their statements were used to convict them in subsequent prosecutions.

The police officers appealed. Concluding the officers' statements were coerced, the United States Supreme Court reversed the convictions. The Court stated: "[t]he choice given to [the defendants] was either to forfeit their jobs or to incriminate themselves. The option to lose their means of livelihood or to pay the penalty of self-incrimination is the antithesis of free choice to speak out or to remain silent." *Id.* 385 U.S. at 497, 87 S.Ct. at 618, 17 L.Ed.2d at 565.

*Garrity* is inapplicable. There is no evidence Colonel Huguley threatened Carson with the loss of his job or any other disciplinary action if he chose to remain silent during discussions about the tack-throwing incident. Unlike the police officers in *Garrity,* Carson was not placed in the untenable position of either giving an incriminating statement or losing his livelihood.[6] Carson's Fifth Amendment right against self-incrimination was not violated.

Moreover, Carson was not disciplined for refusing to respond to questions or for providing a truthful, self-incrimina-

---

6. At the Committee hearing, Carson admitted he was not ordered to give a statement.

ting statement. Rather, his dishonesty was the basis of the disciplinary action.[7]   *See Herek v. Police & Fire Comm'n Village of Menomonee Falls,* 226 Wis.2d 504, 595 N.W.2d 113 (Ct.App.1999).   Carson's Fifth Amendment protections were not violated.

The decision of the Court of Appeals is reversed.

---

**7.**   As discussed above, the Committee found Carson's statement denying participation in the tack-throwing incident was untruthful.