677 S.E.2d 582

HOME MEDICAL SYSTEMS, INC., Respondent,

v.

SOUTH CAROLINA DEPARTMENT OF REVENUE, Appellant.

No. 26638.

Supreme Court of South Carolina.

Heard Feb. 19, 2009.

Decided April 20, 2009.

Rehearing Denied June 24, 2009.

Milton G. Kimpson, Managing Counsel for Litigation; Ray N. Stevens, Director; Harry T. Cooper, Jr, Chief of Staff; and Nicholas P. Sipe, General Counsel for Litigation, all of Columbia, for Appellant.

Erik P. Doerring, Celeste T. Jones, and Robert L. Widener, all of McNair Law Firm, of Columbia, for Respondent.

Justice WALLER:

Appellant South Carolina Department of Revenue (DOR) directly appeals from the grant of summary judgment by the Administrative Law Court (ALC) in favor of respondent Home Medical Systems, Inc. (Taxpayer). We reverse.

## FACTS/PROCEDURAL HISTORY

Taxpayer is a retailer of durable medical equipment, medical supplies, and other medical products. At issue in the instant case is whether the following categories of products are exempt from sales tax:

1. *Continuous Positive Airway Pressure (CPAP) and Bi-level Positive Airway Pressure (BiPAP) devices.* These medical devices are approved by the federal Food and Drug Administration (FDA). The CPAP provides positive air pressure to patients who suffer from a variety of diseases including sleep apnea and acute respiratory failure. The BiPAP provides differing pressure during inhalation to patients who suffer from sleep apnea and acute respiratory failure. Both devices are used to provide a patient with proper breathing and require a physician's prescription.

2. *Ventilator devices.* The ventilator is used by a patient to assist in breathing and is normally connected to the patient through a tracheotomy tube. In its simplest form, a ventilator consists of a compressible reservoir, an oxygen air mixture, and a compressor.

3. *Nasal Intermittent Positive Pressure Ventilation (NIPPV) devices.* This is used by a patient to assist in breathing and is normally connected to the patient through the nasal cavity.

4. *Nebulizer devices.* A nebulizer is a specialized air compressor. The compressor forces pressurized air into a breathing cup into which medication is drawn. The nebulizer's pressure mixes with the medication to ease the introduction of the medication into the patient's lungs. The nebulizer does not force the medication into the lungs, but rather vaporizes the medication so the medication is effectively inhaled. This device is used to treat bronchiospasms and other respiratory diseases.

5. *Enteral Nutritional formulas.* These are prescribed for patients who, due to an illness or disease, are unable to consume food products orally. The formula prescribed is selected by the physician based on the caloric and metabolic needs of the individual patient. The formulas may include specific nutrients to treat specific metabolic disorders such as sodium imbalances and protein needs. Enteral formulas are typically administered by: (1) a gravity feed bag and tubing connected to a feeding tube inserted in the patient, or (2) an electronic pump which also requires bags and tubing and con-

nects to a feeding tube or catheter inserted in the patient.

Taxpayer sold the above items to customers who had a Certificate of Medical Necessity (CMN). A CMN is a standard form used by Medicare and Medicaid; it is signed by a physician and details the customer's diagnosis and medical necessity for the item.

After an audit by the DOR, Taxpayer was assessed sales taxes on retail sales of the above-listed medical devices and products.[1] The DOR's Final Agency Determination ruled there was no tax exemption because: (1) the items listed in categories 1–4 above are not "prosthetic devices" since they do not replace a body part; and (2) the enteral nutritional formulas (category 5) were not actually sold pursuant to a prescription, and do not require a prescription to be sold.

Taxpayer asserted the sales were exempt from sales tax and filed for a contested case hearing. After discovery, the parties filed cross-motions for summary judgment.[2] Following a hearing on the motions, the ALC granted summary judgment in favor of Taxpayer.

The DOR filed a motion for reconsideration with the ALC, which was denied, and thereafter filed a Notice of Appeal. Taxpayer filed a motion to dismiss the appeal based on failure to timely serve the Notice of Appeal. This Court certified the case for review pursuant to Rule 204(b), SCACR, and deferred ruling on the motion to dismiss until after full briefing on the issue and oral argument.

## ISSUES

1. Did the DOR timely serve the Notice of Appeal?

2. Did the ALC err by finding that the sales tax exemption applies to all items and granting summary judgment in favor of Taxpayer?

---

1. The audit covered Taxpayer's sales from July 1, 2000 through June 30, 2003. The proposed assessment was for $299,207.81 in sales taxes, and $ 92,285.51 in interest, for a total of $391,493.32.

2. The DOR's motion was for partial summary judgment.

## DISCUSSION

### 1. Timeliness of Notice of Appeal

■ Taxpayer argues we should dismiss the instant appeal because the DOR failed to timely serve the Notice of Appeal. This raises a novel issue regarding the intersection of the South Carolina Rules of Civil Procedure and the ALC Rules.

The ALC's summary judgment order was dated August 28, 2007, and the DOR received the order on August 30, 2007. On September 10, 2007, the DOR filed a "Motion for Reconsideration and to Alter or Amend Judgment Pursuant to ALC Rule 29(D), ALC Rule 68, and Rule 59(e), SCRCP" (Post–Order Motion). The ALC denied the Post–Order Motion on October 1, 2007. The DOR then served the Notice of Appeal on October 9, 2007.

Taxpayer contends that under the ALC rules, the DOR's Post–Order Motion was improper because ALC Rule 68 does not permit a Rule 59(e), SCRCP, motion. Therefore, according to Taxpayer, the Post–Order Motion did not toll the time period for serving the Notice of Appeal.[3] Stated differently, Taxpayer argues Rule 59(e), SCRCP, does not apply to ALC actions.

The ALC rules contemplate a "motion for reconsideration" under ALC Rule 29(D):

Motion for Reconsideration. Any party may move for reconsideration of a final decision of an administrative law judge in a contested case, **subject to the grounds for relief set forth in Rule 60(B) (1 through 5), SCRCP,** as follows:

(1) Within ten (10) days after notice of the order concluding the matter before the administrative law judge, a party may move for reconsideration of the decision, provided that a petition for judicial review has not been filed.

(2) The administrative law judge shall act on the motion for rehearing within thirty (30) days after it is filed, and if no action is taken by the administrative law judge within that

---

3. The ALC's order was received on August 30, 2007. An appeal from the ALC must be filed within 30 days. *See* Rule 203(b)(6), SCACR. If the time period was not tolled, the deadline for filing in this case would have been Monday October 1, 2007 (because the 30th day fell on **Saturday,** September 29, 2007). *See* Rule 234(a), SCACR.

period, the inaction shall be deemed a denial of the relief sought in the motion.

(3) The filing of a motion for reconsideration shall not, of itself, stay the order of the administrative law judge or excuse or delay compliance with the order of the administrative law judge.

(4) **The time for appeal for all parties shall be stayed by a timely motion for reconsideration, and shall run from receipt of an order granting or denying such motion,** or if no order is filed regarding the motion, thirty (30) days after notice that the motion was filed.

**The filing of a motion for reconsideration is not a prerequisite to filing a notice of appeal from a final decision of an administrative law judge.**

(Emphasis added).

Taxpayer maintains that because ALC Rule 29(D) only allows a motion for reconsideration when there are grounds for relief under Rule 60(b), SCRCP,[4] a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP, is not permitted in an ALC case. The DOR, on the other hand, argues the ALC rules specifically allow the Rules of Civil Procedure to apply. ALC Rule 68 provides as follows:

The South Carolina Rules of Civil Procedure and the South Carolina Appellate Court Rules may, where practicable, be applied in proceedings before the Court **to resolve questions not addressed by these rules.**

---

4. Rule 60(b), SCRCP, states:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
(1) mistake, inadvertence, surprise, or excusable neglect;
(2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);
(3) fraud, misrepresentation, or other misconduct of an adverse party;
(4) the judgment is void;
(5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application.

(Emphasis added). The DOR points out there is no ALC rule akin to Rule 59(e), SCRCP,[5] and thus, ALC Rule 68 authorizes a Rule 59(e) motion. Moreover, the DOR contends that because issue preservation rules apply to an appeal from an ALC action, there is a need for a Rule 59(e) type motion. We agree with the DOR's position.

Although a Rule 59(e) motion may effectively seek a reconsideration of issues and arguments, this type of motion is often **required** for issue preservation purposes. *See Elam v. South Carolina Dep't of Transp.*, 361 S.C. 9, 602 S.E.2d 772 (2004). We explained in *Elam* that "there is nothing inherently unfair in allowing a party one final chance not only to call the court's attention to a possible misapprehension of an earlier argument, but also to revisit a previously raised argument." *Id.* at 22, 602 S.E.2d at 779. Indeed, "it is inherently unfair to disallow such an opportunity." *Id.*

The *Elam* Court further stated that a "party **must** file [a Rule 59(e), SCRCP] motion when an issue or argument has been raised, but not ruled on, in order to preserve it for appellate review." *Id.* at 24, 602 S.E.2d at 780. In *I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 422, 526 S.E.2d 716, 724 (2000), we discussed the policy underlying this rule:

> If the losing party has raised an issue in the lower court, but the court fails to rule upon it, the party **must** file a motion to alter or amend the judgment in order to preserve the issue for appellate review. Imposing this preservation requirement on the appellant is meant to enable the lower court to rule properly after it has considered **all** relevant facts, law, and arguments.

(Emphasis added, citations omitted).

■ Put simply, Rule 59(e) motions serve a vital purpose for proper issue preservation. As in other appellate matters, we require issue preservation in administrative appeals. *See, e.g., Brown v. South Carolina Dep't of Health and Envtl. Control*, 348 S.C. 507, 519, 560 S.E.2d 410, 417 (2002) (issues not raised to and ruled upon by the ALC are unpreserved for appellate review); *Carson v. South Carolina Dep't of Natural*

---

5. Under Rule 59(e), SCRCP, a motion "to alter or amend the judgment" may be made within ten days of receipt of written notice of the entry of the order.

*Res.,* 371 S.C. 114, 120, 638 S.E.2d 45, 48 (2002) (court sitting in appellate capacity may not consider issues not raised or ruled on by administrative agency); *Kiawah Resort Assoc. v. South Carolina Tax Comm'n,* 318 S.C. 502, 458 S.E.2d 542 (1995) (same). We therefore hold Rule 59(e), SCRCP, motions are permitted in ALC proceedings. Accordingly, the DOR's Post–Order Motion tolled the time period for filing an appeal, and the Notice of Appeal was timely served. We deny Taxpayer's motion to dismiss.

## 2. Application of the Sales Tax Exemption

The DOR argues the ALC erred in finding Taxpayer is entitled to the sales exemption for the above-categorized products.

State law sets the retail sales tax on tangible personal property at five percent. *See* S.C.Code Ann. § 12–36–910(A) (2000). By statute, however, there is a sales tax exemption for "medicine and prosthetic devices sold by prescription." S.C.Code Ann. § 12–36–2120(28)(a) (2000 & Supp.2008).

"To assist in the administration of this exemption," the DOR promulgated a regulation which defines both medicine and prosthetic devices:

"Medicine"—a substance or preparation used in treating disease.

"Prosthetic Device"—an artificial device to replace a missing part of the body.

S.C.Code Reg. § 117–332 (Supp.2008). The regulation further provides as follows, in pertinent part:

The sale of prescription lenses that replace a missing part of the eye are exempted from the tax, as for example eyeglasses prescribed for a person whose natural lenses have been surgically removed.

Eyeglasses, contact lens, hearing aids and orthopedic appliances, such as braces, wheelchairs and orthopedic custommade shoes, do not come within the exemption at Code Section 12–36–2120(28).

*Id.*

In a 2003 Revenue Ruling, the DOR issued an advisory opinion on this exemption, and opined as follows, in relevant part:

*Medicine sold by prescription.* In order for this exemption to be applicable, the medicine must be of a type that requires a prescription, the sale must require a prescription, and must actually be sold by prescription....

*Prosthetic devices sold by prescription.* In order for this exemption to be applicable, ... the sale must require a prescription and the device must actually be sold by prescription and the device must replace a missing part of the body. **A device that merely replaces a missing function is not exempt.**

S.C. Rev. Rul. # 03–02 (2003) (emphasis added).

Despite the DOR's long-standing construction of this exemption,[6] the ALC found that the department's policies had "contorted the plain language of the statute to severely limit the scope of the exemption." The ALC stated that "the definition of prosthetic device has been updated as the field of medicine has progressed" and therefore found all of the devices at issue in the instant case are prosthetic devices. Furthermore, the ALC held that Regulation 117–332's definition of "prosthetic device" was inconsistent with "current medical definitions and as such should be rejected as contrary to the intent of the General Assembly to provide an exemption for 'prosthetic devices sold by prescription.'"

■ The DOR argues the ALC erred in invalidating the agency's definition of prosthetic device and by improperly broadening the definition. We agree.

■■ The language of a tax exemption statute must be given its plain, ordinary meaning and must be strictly construed against the claimed exemption. *TNS Mills, Inc. v. South Carolina Dep't of Revenue,* 331 S.C. 611, 620, 503 S.E.2d 471, 476 (1998); *see also Southeastern–Kusan, Inc. v. South Carolina Tax Comm'n,* 276 S.C. 487, 489, 280 S.E.2d 57, 58 (1981) ("As a general rule, tax exemption statutes are strictly construed against the taxpayer."). Moreover, "[r]egulations authorized by the Legislature have the force of law." *Goodman v. City of Columbia,* 318 S.C. 488, 490, 458 S.E.2d 531, 532 (1995). Nonetheless, a regulation may not alter or add to a statute. *Id.*

---

**6.** These regulatory definitions have been in continuous use since 1978.

The sales tax exemption enumerated in section 12–36–2120(28)(a) is for "medicine and prosthetic devices sold by prescription." Taxpayer submitted a multitude of definitions for "prosthetic devices" and "prosthesis" in support of its motion for summary judgment. Based on our review of the record, we agree with the DOR's observation that many of these definitions have as a primary definition one that is consistent with the regulatory definition, e.g. "an artificial replacement of a body part." Accordingly, we find Regulation 117–332 reasonably defines "prosthetic devices."

Moreover, while it is clear that one current, accepted definition in the medical community is a broad one which encompasses not only a device to replace a missing part of the body, but also a device to replace missing functionality, we emphasize that simply because another definition exists does not mean the ALC is empowered to invalidate an otherwise proper regulatory definition. *See Drummond v. State, Dep't of Revenue,* 378 S.C. 362, 370, 662 S.E.2d 587, 591 (2008) (because the ALC is part of the executive branch, it has "no authority to rule on the facial validity" of a regulation); *cf. Goodman, supra* (unless a regulation improperly alters or adds to a statute, a court may not invalidate it).

Finally, we note the ALC's ruling that the regulatory definition was not sufficiently expansive goes against the rule that a statutory tax exemption must be strictly construed against the taxpayer. *TNS Mills, Inc. v. South Carolina Dep't of Revenue, supra.*

In sum, we hold that the ALC erred in applying its own, broad definition of prosthetic device to find that Taxpayer's durable products were prosthetic devices.

■ Regarding the enteral nutritional formulas, the ALC found they were "medicine sold by prescription."[7] The DOR argues that because the formulas are "over the counter"

---

7. We recognize the ALC found that all the items at issue—even the durable devices—were medicine sold by prescription. In making this determination, the ALC relied on the definition of medicine for pharmacists found in S.C.Code Ann. § 40–43–30(16). We agree with the DOR that this definition has no application to the definition of medicine in the sales tax exemption statute found in section 12–36–2120(28)(a). *See* § 40–43–30 (where statute specifies that the definitions are for "purposes of **this** chapter") (emphasis added).

(OTC) products [8] which do not **require** a prescription, the ALC erred. Furthermore, the DOR contends that CMNs are not equivalent to a prescription. We agree.

As discussed above, the DOR has set forth a definition for "medicine by prescription"—the medicine must be of a type that requires a prescription, the sale must require a prescription, and it must actually be sold by prescription. Taxpayer argues that a prior legislative version (a 1970 reimbursement statute) more explicitly stated the requirement—"medicines required by law to be sold only by prescription"—and therefore, the current language is not **exclusively** for medicines that require a prescription. In our opinion, however, the current statutory language—"medicine ... sold by prescription"—clearly evidences a legislative intent that the exemption be only for those medicines requiring a prescription. *See TNS Mills, Inc., supra* (tax exemption statute must be given its plain, ordinary meaning and must be strictly construed **against** the claimed exemption).[9]

## CONCLUSION

We hold the ALC rules allow a Rule 59(e), SCRCP, motion, and therefore deny Taxpayer's motion to dismiss the appeal. Additionally, we reverse the ALC's decision which found Taxpayer's products tax exempt.

REVERSED.

TOAL, C.J., PLEICONES, BEATTY and KITTREDGE, JJ., concur.

---

**8.** One example the DOR highlights is PediaSure with Fiber which can be purchased at a grocery store.

**9.** Moreover, in another section of the sales tax exemption statute, the Legislature seems to have made a distinction between prescription and OTC medicines. The statute provides the following exemption:

(63) prescription and over-the-counter medicines and medical supplies, including diabetic supplies, diabetic diagnostic equipment, and diabetic testing equipment, sold to a health care clinic that provides medical and dental care without charge to all of its patients.

§ 12–36–2120. Thus, if the Legislature had intended to include OTC medicines in the exemption at issue here, it could have used language evidencing that intent.