## 21501

SOUTHEASTERN-KUSAN, INC., Appellants, v. SOUTH CARO-LINA TAX COMMISSION and Robertt Wasson, Chairman, John H. LaFitte, Jr., Commissioner, and Charles N. Plowden, Commissioner, Constituting the Members of the South Carolina Tax Commission, Respondents.

(280 S. E. (2d) 57)

*Dobson & Dobson,* and *B. Joel Stoudenmire,* Greenville, *for appellants.*

*Atty. Gen. Daniel R. McLeod, Deputy Atty. Gen. Joe L. Allen, Jr.,* and *Senior Asst. Atty. Gen. G. Lewis Argoe, Jr.,* and *Asst. Atty. Gen. Jackson E. Fields, Jr.,* Columbia, *for respondents.*

*Charles W. Knowlton,* of *Boyd, Knowlton, Tate & Finlay,* Columbia, *for amicus curiae.*

June 23, 1981.

LITTLEJOHN, Justice:

Plaintiff Southeastern-Kusan, Inc. (Southeastern), pursuant to § 12-35-1440, *Code of Laws of South Carolina* (1976), sees a refund of $67,769.11 sales tax and interest it paid under protest to defendant South Carolina Tax Commission (Tax Commission). The outcome revolves around our interpretation and application of the sales tax exemption in § 12-35-550(17).

· The facts are not disputed. Southeastern manufactures plastic parts and sells them predominantly to other manufacturers where the parts become integrated into a final product, *e. g.,* plastic components in furniture, in textile machinery, and in stereo equipment. Because these parts are generally custom ordered, a special mold must first be designed for each customer. The mold is inserted into and becomes a necessary part of Southeastern's machinery during production of the plastic parts and is then stored by the customer at Southeastern's plant for future orders. Southeastern bills the customer for the molds separately from its bills for plastic parts. No sales tax is added to the billings for the molds. The contest arises because the Tax Commission submits that sales tax should have been added and collected.

Under § 12-35-510, a 4% tax on the gross proceeds of sales is imposed generally upon every person within South

Carolina in the business of selling at retail any tangible personal property. In § 12-35-550, however, the legislature has exempted from this 4% sales tax the proceeds derived from certain enumerated sales. Section 12-35-550(17) provides the following exemption:

"There are exempted from the provisions of this article [Retail License, Sales & Use Taxes]

. . .

(17) The gross proceeds of the sale of . . . machinery used in . . . processing and manufacturing of tangible personal property; provided that the term *'machines,'* as used in this article, shall include the parts of such machines [and] attachments . . . which are used . . . on or in the operation of such machines and which are necessary to the operation of such machines. . . ."

There is no disagreement between the parties that the term *"machines,"* as used in this exemption, covers the molds. The issue is whether the exemption was intended to apply only to those who both own the machinery (*e. g.,* mold) and use it in their own manufacturing plant. In such case, Southeastern could not claim the exemption since it did not own the molds.

As a general rule, tax exemption statutes are strictly construed against the taxpayer. *Owen Industrial Products, Inc. v. Sharpe,* 274 S. C. 193, 262 S. E. (2d) 33 (1980). *Hollingsworth on Wheels, Inc. v. Greenville County Taxes, et al.,* S. C., 278 S. E. (2d) 340 (1981). This rule of strict construction simply means that constitutional and statutory language will not be strained or liberally construed in the taxpayer's favor. *York County Fair Association v. S. C. Tax Commission,* 249 S. C. 337, 154 S. E. (2d) 361 (1967). It does not mean that we will search for an interpretation in the Tax Commission's favor where the plain and unambiguous language leaves no room for construction. Only when the literal application of a stat-

ute produces an absurd result will we consider a different meaning. *Martin v. Ellisor,* 266 S. C. 377, 223 S. E. (2d) 415 (1976). Section 12-35-550(17) exempts from sales tax the gross proceeds from the *sale of machinery used in manufacturing.* The clear language does not restrict or condition the exemption upon use *by the owner.* To allow Southeastern to claim this exemption produces no absurd result. It is consistent with the general purpose of this exemption, which is to avoid the pyramiding of taxes on the same commodity (thereby preventing the increase of sales price to the ultimate consumer) and to promote new industry within the State and encourage expansion of present industry. 68 Am. Jur. (2d) *Sales and Use Taxes* § 112.

For these reasons, Southeastern may claim the exemption under § 12-35-550(17) and must be refunded the $67,769.11 it paid under protest.

Reversed.

LEWIS, C. J., and NESS, GREGORY and HARWELL, JJ., concur.