# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Deerfield Plantation Phase II B Property Owners
Association, Appellant,

v.

South Carolina Department of Health and Environmental
Control and Deertrack Golf, Inc., Respondents,

v.

Bill Clark Homes of Myrtle Beach, LLC, Respondent.

Appellate Case No. 2009-135686

———————

Appeal From The Administrative Law Court
John D. McLeod, Administrative Law Judge

———————

Opinion No. 27576
Heard June 4, 2015 – Filed September 30, 2015

———————

**AFFIRMED AS MODIFIED**

———————

Amy Elizabeth Armstrong, of South Carolina
Environmental Law Project, of Pawleys Island, for
Appellate.

Mary Duncan Shahid, Stephen Peterson Groves, Sr., and
Angelica M. Colwell, all of Nexsen Pruet, LLC, of
Charleston, Stanley E. Barnett, of Smith Bundy Bybee &
Barnett, PC, of Mt. Pleasant, Stephen Philip Hightower,
of Columbia, Bradley David Churdar and Nathan
Michael Haber, both of Charleston, for Respondents.

**CHIEF JUSTICE TOAL:**  Deerfield Plantation Phase II B Property Homeowners Association (Appellant) appeals the Administrative Law Court's (ALC) decision affirming Respondent South Carolina Department of Health and Environmental Control's (DHEC) decision to grant a National Pollutant Discharge Elimination System (NPDES) General Permit for Storm Water Discharges from Large and Small Construction Activity and Coastal Zone Consistency Certification to Respondent Deertrack Golf, Inc. (Deertrack Golf).[1]  We affirm as modified the ALC's decision upholding DHEC's issuance of the permit.  Further, in light of the subsequent declaration of federal jurisdiction as to part of the acreage subject to the permit, we remand the case to DHEC for further administrative action consistent with this opinion.

## FACTS/PROCEDURAL BACKGROUND

Deertrack Golf owns the real property that is the subject of this dispute, a non-operational golf course known as the Old South Golf Course (the Old South Course), which consists of approximately 158 acres in Surfside Beach, South Carolina.  In 2005, Deertrack Golf decided to sell the Old South Course for redevelopment.  On September 2, 2005, Bill Clark Homes entered into a contract with Deertrack Golf to purchase the Old South Course.  Bill Clark Homes designed a residential subdivision to be constructed within the acreage known as Phase I of the Old South Course, and obtained approval from Horry County for a subdivision consisting of 278 lots and comprising approximately 85 acres.  The Old South Course is adjacent to an existing residential development known as Deerfield Plantation Phase II B, and Appellant represents its residents, who oppose the residential redevelopment of the Old South Course.

The redevelopment plan necessitated the construction of a new stormwater management system utilizing an existing drainage network of stormwater ponds on the Old South Course.  Therefore, Deertrack Golf sought to obtain an NPDES permit (the Permit) from DHEC.  Likewise, because the Old South Course is located within one of the eight coastal counties that comprise South Carolina's coastal zone, DHEC's Office of Ocean and Coastal Resource Management (OCRM) reviewed the project to determine its consistency with the Coastal

---

[1] Respondent Bill Clark Homes of Myrtle Beach, LLC (Bill Clark Homes) previously intervened in this action, but no longer has a contractual interest in the development tract and is no longer participating in the action.

Management Program (the CZC Certification). Finally, the redevelopment required a jurisdictional determination from the Army Corps of Engineers (the Corps) regarding whether any portion of proposed redevelopment acreage contained "waters of the United States" subject to the Corps' jurisdiction under the federal Clean Water Act.

In August 2006, the Corps determined that the tract did not contain any federal waters subject to the Corps' jurisdiction. On February 29, 2008, DHEC issued the Permit to Deertrack Golf, and OCRM issued the CZC Certification. Appellant filed a contested case in the ALC, arguing that DHEC wrongfully issued the Permit.

A hearing was held in the ALC on March 10–12, 2009. On June 9, 2009, the ALC issued a Final Order affirming DHEC's issuance of the Permit and the CZC Certification. Appellant appealed the decision to the court of appeals on July 29, 2009.

However, in 2010, upon Appellant's application, the Corps declared federal jurisdiction over .37 acres of the existing waters on the proposed 85-acre redevelopment tract. Appellant appealed the decision to the United States District Court for the District of South Carolina, arguing the Corps erred in failing to declare federal jurisdiction over the remaining waters found within the proposed redevelopment tract, and the District Court granted summary judgment to the Corps. *Deerfield Plantation Phase II–B Prop. Owners Ass'n, Inc. v. U.S. Army Corps of Eng'rs*, 801 F. Supp. 2d 446, 449–51 (D.S.C. 2011). Appellant appealed the district court's decision to the United States Court of Appeals for the Fourth Circuit, which affirmed. *See Deerfield Plantation Phase II-B Prop. Owners Ass'n, Inc., v. U.S. Army Corps of Engineers*, 501 F. App'x 268 (4th Cir. 2012).

During the pendency of the federal appeals, the South Carolina Court of Appeals variously stayed and held in abeyance the state appeal. However, on January 12, 2012, the court of appeals remanded the case "to the ALC to further remand the matter to DHEC for additional administrative action." The ALC remanded the case to DHEC on February 21, 2012. On May 17, 2013, after DHEC took no additional administrative action, the court of appeals dismissed the appeal. After Respondents filed petitions for rehearing claiming the court of appeals misapprehended DHEC's reasons for taking no action on the Permit, the court of appeals reinstated the appeal on September 20, 2013. This Court then certified the case for review pursuant to Rule 204(b), SCACR.

**ISSUES**

**I.**      Whether the ALC erred in upholding DHEC's decision to grant the Permit as a matter of law?

**II.**     Whether the subsequent declaration of federal jurisdiction over a portion of the existing stormwater ponds as "waters of the United States" has the effect of terminating the Permit?

**STANDARD OF REVIEW**

A party who has exhausted all administrative remedies available within an agency and who is aggrieved by an ALC's final decision in a contested case is entitled to judicial review. S.C. Code Ann. § 1-23-380 (Supp. 2014). In an appeal from a decision by the ALC, the Administrative Procedures Act provides the appropriate standard of review. *See* S.C. Code Ann. § 1-23-610(B) (Supp. 2014). This Court will only reverse the decision of an ALC if that decision is:

(a) in violation of constitutional or statutory provisions;

(b) in excess of the statutory authority of the agency;

(c) made upon unlawful procedure;

(d) affected by other error of law;

(e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(f) arbitrary or capricious or characterized by an abuse of discretion or clearly unwarranted exercise of discretion.

*Id.* Thus, this Court's review is limited to determining whether the ALC's findings were supported by substantial evidence, or were controlled by an error of law. *Hill v. S.C. Dep't of Health & Envtl. Control*, 389 S.C. 1, 9, 698 S.E.2d 612, 616 (2010) (citations omitted). As to questions of fact, the Court may not substitute its judgment for the ALC's judgment when weighing the evidence. S.C. Code Ann. § 1-23-610(B). Thus, in determining whether the ALC's decision was supported by

substantial evidence, this Court need only find that, upon looking at the entire record on appeal, there is evidence from which reasonable minds could reach the same conclusion that the ALC reached. *Hill*, 389 S.C. at 9–10, 698 S.E.2d at 617.

LAW/ANALYSIS

### I. Permitting Decision

As part of a NPDES permitting decision, DHEC applies regulations it administers pursuant to the NPDES Program,[2] regulations controlling stormwater runoff,[3] and regulations encompassing South Carolina's Water Classification and Standards.[4]

The stormwater regulations provide that unless exempted, "a person may not undertake a land disturbing activity without an approved stormwater management and sediment control plan." S.C. Code Ann. Regs. 72-305(A). In other words, all non-exempt development construction sites must have a permitted plan for handling stormwater, the requirements of which depend on the size and complexity of the project. *See id.* 72-305(B). These regulations contain requirements for both

---

[2] *See* S.C. Code Ann. Regs. 61-9.122.1 to .122.64 (2011). The NPDES Program requires permits for the discharge of "pollutants" from any "point source" into "waters of the State" or "waters of the United States." *Id.* 61-9.122.1(b)(1); *see also id.* 61-9.122.2 (defining these terms). The regulations were promulgated pursuant to the Clean Water Act (CWA), 33 U.S.C. §§ 1251–1387 (2006), and the South Carolina Pollution Control Act (Pollution Control Act), S.C. Code Ann. §§ 48-1-10 to -350 (2008 & Supp. 2014). *See* S.C. Code Ann. Regs. 61-9.122.1(a)(1).

[3] *See* S.C. Code Ann. Regs. 72-300 to -316 (2012). These regulations are promulgated pursuant to the Stormwater Management and Sediment Reductions Act, S.C. Code Ann. §§ 48-14-10 to -170 (2008).

[4] *See* S.C. Code Ann. Regs. 61-68 (2012). The State Water Classification and Standards regulations were also promulgated pursuant to the Pollution Control Act, and "establish a system and rules for managing and protecting the quality of South Carolina's surface and ground water." *See id.* 61-68(A). Further, the regulations "establish the State's official classified water uses for all waters of the State, establish general rules and specific numeric and narrative criteria for protecting classified and existing water uses, and establish procedures for classifying waters of the State." *Id.*

temporary construction site stormwater management and permanent stormwater management systems within the completed development. *See id.* 73-307(B) (temporary) & 73-307(C) (permanent). Likewise, the NPDES regulatory scheme requires a stormwater permit for redevelopment construction sites and also contains additional stormwater management requirements. *See id.* 61-9.122.26. Compliance with the interrelated regulations is accomplished in one permitting action, and DHEC grants coverage under a general permit known as the "NPDES General Permit for Stormwater Discharges, from Large and Small Construction Activities"—here, the Permit.

In addition, Regulation 61-68 classifies various bodies of water, and provides for standards to protect and maintain these bodies of water based on their classifications. Relevant to this controversy, Regulation 61-68(E)(4) provides:

> Any discharge into waters of the State must be permitted by [DHEC] and receive a degree of treatment and/or control which shall produce an effluent which is consistent with the [Pollution Control] Act, the CWA . . . , this regulation, and related regulations. No permit issued by [DHEC] shall be interpreted as creating any vested right in any person . . . . [DHEC] may require best management practices (BMPs) for control of stormwater runoff as part of the requirements of an NPDES permit, a State construction permit, or a State 401 Water Quality Certification.

S.C. Code Ann. Regs. 61-68(E)(4). "Waters of the State" is defined as "lakes, bays, sounds, ponds, impounding reservoirs, springs, wells, rivers, streams, creeks, estuaries, marshes, inlets, canals, the Atlantic Ocean within the territorial limits of the State, and all other bodies of surface or underground water, natural or artificial, public or private, inland or coastal, fresh or salt, which are wholly or partially within or bordering the State or within its jurisdiction." *Id.* 61-9.122.2(b).

Here, while the ALC found the existing stormwater drainage ponds located on the Old South Course were "waters of the State," it further attempted to reconcile what it saw to be a conflict in the applicable regulatory schemes. To this end, the ALC concluded as a matter of law that no pretreatment was required pursuant to Regulation 61-68 because the more specific regulations relating to stormwater management and stormwater discharges (Regulations 72-300 to 72-316 and 61-9.122.26) controlled instead. In addition, the ALC noted:

To endorse [Appellant's] position[] that the existing drainage ponds on the golf course cannot be incorporated into the stormwater management plan and system for the proposed redevelopment of the golf course without requiring pre-treatment of the stormwater discharge would require this [c]ourt to ignore not only the intent and purpose of the Stormwater Management Act and regulations, but common sense as well. Pre-treatment of stormwater running into a stormwater pond is a contradiction in terms. The very purpose of the stormwater pond is to intercept and treat the stormwater before discharge into a receiving waterbody.

Appellant now argues that once the ponds are found to be "waters of the State," Regulation 61-68's pretreatment requirement must be met. Appellant therefore asserts that this Court should reverse the ALC and remand the case to DHEC for the proper application of Regulation 61-68.

We agree with the ALC and Appellant that these ponds fall within the definition of "waters of the State," and we agree with Appellant that the ALC erred in finding that the regulations relating to stormwater management and discharges conflicted with Regulation 61-68. Thus, we find that as "waters of the State," the ponds are subject to the requirements contained in Regulation 61-68. However, we disagree with Appellant that the only way these requirements may be met under Regulation 61-68(E)(4) is through pretreatment.

Instead, Regulation 61-68(E)(4) plainly states that "[a]ny discharge into waters of the State must . . . receive a degree of treatment ***and/or control*** which shall produce an effluent which is consistent with the [Pollution Control] Act, the [CWA] . . . , this regulation, and related regulations." S.C. Code Ann. Regs. 61-68(E)(4) (emphasis added). Moreover, the Regulation states that DHEC "***may require best management practices (BMPs) for control of stormwater runoff as part of the requirements of an NPDES permit***, a State construction permit, or a State 401 Water Quality Certification." *Id.* (emphasis added).

BMPs are defined as "a wide range of management procedures, schedules of activities, prohibitions on practices and other management practices which have been demonstrated to effectively control the quality and/or quantity of stormwater runoff and which are compatible with the planned land use." *Id.* 72-301(5). One such BMP is the use of detention structures, defined as "a permanent stormwater

management structure whose primary purpose is to temporarily store stormwater runoff and release the stored runoff at controlled rates." *Id.* 72-301(11). Detention structures—i.e., the existing stormwater ponds at issue here—are a common BMP.

Thus, we find the existing stormwater ponds built on the Old South Course to provide control of stormwater runoff comply with Regulation 61-68(E)(4)'s "pretreatment and/or control" requirement. To declare that pretreatment is required would be to ignore the underlying function of these ponds—to control stormwater. To this end, we agree with the ALC that it would be illogical to interpret Regulation 61-68 as requiring pretreatment of stormwater before that same stormwater is discharged into a detention pond set up for that purpose. While the ALC wrongly found the applicable regulations to be conflicting, we find that Appellant's interpretation of Regulation 61-68 ignores the "control" language.

By its plain terms, Regulation 61-68 requires some degree of pretreatment *or* control, and by implementing a BMP in the form of detention ponds, Deertrack Golf has complied with the regulation.[5]

Therefore, we affirm as modified the ALC's decision to uphold DHEC's issuance of the Permit.

## II. Subsequent Declaration of Federal Jurisdiction

Appellant next argues that the subsequent declaration of federal jurisdiction[6]

---

[5] Along the same lines, while DHEC was initially incorrect in its assertion that these ponds were not "waters of the State," we note that DHEC's application of Regulation 61-68 was ultimately correct in that the stormwater ponds were providing a mechanism of control complicit with the regulatory scheme such that no other pretreatment of the stormwater runoff was required.

[6] The CWA authorizes the Corps to "issue formal determinations concerning the applicability of the [CWA] . . . to activities or tracts of land and the applicability of general permits or statutory or statutory exemptions to proposed activities." *See* 33 C.F.R. § 320.1(a)(6) (2015). In addition, the Corps is authorized to decide whether a tract of land is subject to the agency's regulatory jurisdiction under Section 404 of the CWA, 33 U.S.C § 1344 (2015). *See* 33 C.F.R. § 331.2 (2015) ("Jurisdictional determination (JD) means a written Corps determination that a wetland and/or waterbody is subject to regulatory jurisdiction under Section 404 of the [CWA] . . . . For example, such geographic JDs may include, but are not limited to, one or more of the following determinations: the presence or absence of

over a portion of the waters on the redevelopment site necessitates an entirely new permit. Appellant primarily argues that a new permit is required because federal permitting is a *precondition* to the granting of a NPDES permit. Therefore, Appellant asks this Court to reverse DHEC's decision to grant the Permit, which in turn would require Deertrack to seek an entirely new permit. Respondents concede that Deertrack Golf will likely have to submit to an additional approval process, but contest Appellant's assertion that an entirely new permit is needed. We agree with Respondents.

First, as noted by Respondents, at the time of the ALC's decision, the Corps had not found that the tract contained federal jurisdictional waters. Because the ALC labored under the Corps' initial determination that there were "no waters of the United States on the site," and the current assertion of jurisdiction was made after the ALC's decision was issued, we consider the question only as it relates to the existing Permit.

To this end, we disagree with Appellant's contention that the entire Permit is invalid. As Respondents suggest, the Permit itself dictates what should occur in light of the subsequent assertion of federal jurisdiction.

Section 2.1(C) of the Permit provides that "[i]f a US Army Corps of Engineers' 404 Permit is required by Section 404 of the CWA . . . for permanent or temporary storm water control structures, DHEC may not grant you coverage under the [Permit] until the 404 Permit has been issued and is effective." However, section 2.1(C)(1) of the Permit also provides that "[i]n situations where

---

wetlands; the location(s) of the wetland boundary, ordinary high water mark, mean high water mark, and/or high tide line; interstate commerce nexus for isolated waters; and adjacency of wetlands to other waters of the United States. All JDs will be in writing and will be identified as either preliminary or approved."). Section 404 requires, *inter alia*, a permit for the "discharge of dredged or fill material into the navigable waters," which are defined in turn as "waters of the United States." 33 U.S.C. §§ 1344(a) (permitting discharge into navigable waters at specified disposal sites), 1362(7) (defining "navigable waters" as "the waters of the United States, including the territorial seas"); 33 C.F.R. § 328.3(a) (2014) (defining "waters of the United States"). Thus, an entity that intends to fill a portion of "waters of the United States" must obtain a permit prior to taking action pursuant to this section of the CWA. The Corps issues the permit based upon an evaluation under the Guidelines for Specification of Disposal Sites for Dredged or Filled Material, which are codified at 40 C.F.R. § 230 (2015).

the 404 [p]ermit decision will not affect the implementation of [the stormwater pollution prevention plan], [DHEC] will issue approval of the [the stormwater pollution prevention plan] and grant coverage under this permit before the 404 Permit decision is effective." Moreover, section 2.1(C)(2) of the Permit provides that "[i]n situations where the 404 [p]ermit decision will affect only a portion of the 'Project Area', [DHEC] may grant the unaffected portion of the 'Project Area' coverage under this permit," and "[t]he remaining portion of the 'Project Area' will be considered after the 404 [p]ermit is issued and effective."

Thus, even if the Corps' assertion of jurisdiction requires a 404 inquiry, such inquiry would only affect .37 acres of approximately 85 total acres, and regardless of the outcome of the inquiry, the Corps' decision would not affect the remainder of the project covered by the Permit. Accordingly, we find that the subsequent assertion of federal jurisdiction does not defeat the Permit in its entirety. However, because additional agency action may be necessary with regard to the .37 acres over which the Corps has asserted jurisdiction, we remand the case to DHEC for further action consistent with this opinion.

## CONCLUSION

We affirm as modified the decision of the ALC, but remand the case to DHEC for further action as necessary to implement the Permit.

**PLEICONES, KITTREDGE, HEARN, JJ., and Acting Justice James E. Moore, concur.**