# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

J. Annette Oakley, Appellant.

v.

Beaufort County Assessor, Respondent.

Appellate Case No. 2018-002153

Appeal From The Administrative Law Court
S. Phillip Lenski, Administrative Law Judge

Opinion No. 5876
Submitted November 1, 2021 – Filed December 8, 2021

**AFFIRMED**

Curtis Lee Coltrane, of Coltrane & Wilkins, LLC, of
Hilton Head Island, for Appellant.

Stephen P. Hughes and Catherine Laird Floeder, both of
Howell, Gibson & Hughes, PA, of Beaufort, for
Respondent.

**HEWITT, J.:** This case concerns the four percent assessment for owner-occupied
residential property, commonly called the homestead exemption. J. Annette Oakley
appeals the Administrative Law Court's (the ALC's) order granting the Beaufort
County Assessor's (the Assessor's) motion for summary judgment. The ALC held
Oakley does not qualify for the homestead exemption because her husband resides
in Tennessee. We agree and affirm.

**FACTS**

The ALC heard this case on cross-motions for summary judgment and stipulated facts.  At all times relevant to this action, Oakley was the sole owner of a house on Hilton Head Island.  She was a citizen and resident of Beaufort County and occupied the property as her primary legal residence.

Oakley timely applied for the 2017 tax year, seeking the homestead exemption under section 12-43-220(c)(1) of the South Carolina Code.  Oakley did not claim the homestead exemption on any real property during that tax year.

Oakley's application disclosed that her husband was a citizen and resident of Tennessee.  The parties stipulated Husband did not reside on Hilton Head at any point during 2017 or at the time of Oakley's homestead exemption application.[1]  Oakley and Husband have never sought or obtained a legal separation, partial or complete termination of their marital relationship, or any property or marital settlement.

The Assessor denied Oakley's application for the homestead exemption.  Oakley sought review in the ALC.  After a hearing, the ALC granted the Assessor's motion for summary judgment.  This appeal followed.

**ANALYSIS**

Oakley argues Husband did not reside with her and therefore was not a member of her household under the plain language of the statute and what she claims is the common meaning of household.  *See Household*, *Black's Law Dictionary* (10th ed. 2014) (defining "household" as "[a] family living together" and "[a] group of people who dwell under the same roof").  We respectfully disagree.

The points of contention in this case are the subsections addressing the certification a taxpayer must file in his or her application for the homestead exemption.  Section 12-43-220(c)(2)(ii) requires a taxpayer to validate:

> (A) the residence which is the subject of this application is my legal residence and where I am domiciled at the time of this application and that neither I, *nor any member of my household*, claim to be a legal resident of a jurisdiction other than South Carolina for any purpose; and

---

[1] Still, Oakley admitted Husband "is in South Carolina a good bit, [] pays a substantial amount of real estate taxes, [and] has a business, etc."

> (B) that neither I, *nor a member of my household*, claim the special assessment ratio allowed by this section on another residence.

S.C. Code Ann. § 12-43-220(c)(2)(ii) (2014) (emphases added).  A subsequent subsection provides:

> For purposes of subitem (ii)(B) of this item, "a member of my household" means:
>
> (A) the owner-occupant's spouse, except when that spouse is legally separated from the owner-occupant . . . .

S.C. Code Ann. § 12-43-220(c)(2)(iii)(A) (2014).

Oakley's argument relies on a verbatim reading of these subsections, or more precisely, on a verbatim reading of the subsection defining "member of my household."  She points to the language explaining the definition applies to part (B)—the requirement that neither she nor anyone in her household claim the exemption on another residence—and argues that the definition *only* applies there. As she sees it, the definition does not apply to part A's requirement that neither she nor anyone in her household claim to be a legal resident of another jurisdiction.

The ALC found the statute was ambiguous because when read literally, "member of my household" was expressly defined for part B but not expressly defined for part A.  Regardless of whether one characterizes the statute as ambiguous, we do not read statutes literally.  We begin with the text, but the ultimate goal is to determine the General Assembly's intent.  *See Branch v. City of Myrtle Beach*, 340 S.C. 405, 410, 532 S.E.2d 289, 292 (2000) ("Courts should consider not merely the language of the particular clause being construed, but the undefined word and its meaning in conjunction with the purpose of the whole statute and the policy of the law.").

The statute uses precisely the same term of art in part A and part B—member of my household—but only explicitly defines the term as to part B.  When read word for word, it is admittedly unclear whether the General Assembly intended for homeowners to apply the definition to part A as well as part B.  But any blurs become clear when one considers the statute's purpose, its history, general rules for reading statutes, and the statute's subsequent history.

First, the purpose. We cannot think of any reason the General Assembly would want "member of my household" to have two different meanings in the context of the certification a taxpayer must execute when applying for the homestead exemption. In part A, the General Assembly expressed an intention that all members of the taxpayer's household reside in South Carolina. If we read the statutory definition of household members to apply only to whether someone claims the homestead exemption on another South Carolina property, Oakley would have that subsection—part B—be the only subsection with any practical effect.

Second, the legislative history. The General Assembly amended these subsections in 2012. Before those amendments, the term "member of my household" appeared *only* in part B, not in part A. *See* S.C. Code Ann. § 12-43-220(c)(2)(ii) (Supp. 2011). That version of the statute required a taxpayer to certify:

> (A) the residence which is the subject of this application is my legal residence and where I am domiciled at the time of this application and that I do not claim to be a legal resident of a jurisdiction other than South Carolina for any purpose; and

> (B) that neither I nor any other member of my household is residing in or occupying any other residence which I or any member of my immediate family has qualified for the special assessment ratio allowed by this section.

*Id*. The 2012 amendments added the phrase "member of my household" to part A. *See* Act No. 179, 2012 S.C. Acts 1743, 1746-47 (§§ 3.A, 3.B). While the General Assembly did not amend the definitional subsection to specifically include the newly modified part A, the General Assembly likely did not intend different definitions for the very same term that was used elsewhere in the very same taxpayer certification. *See Hodges v. Rainey*, 341 S.C. 79, 87, 533 S.E.2d 578, 582 (2000) ("[Our supreme c]ourt has interpreted statutes in accord with legislative intent despite contrary literal meaning in cases where there has been an oversight by the legislature that is clearly in conflict with the overall intent of the statute . . . .").

The third basis for our decision is like the second and relies on general rules for reading statutes. The term "member of my household" or a derivative thereof appears multiple times throughout section 12-43-220. In addition to the previously mentioned uses in subsections (c)(2)(ii)(A), (c)(2)(ii)(B), and (c)(2)(iii)(A), subsection (c)(2)(v)(B) makes use of a derivative once and subsection (c)(8) makes

use of a derivative twice. *See* S.C. Code Ann. § 12-43-220(c)(2)(v)(B), (c)(8) (2014). The ALC found the General Assembly, through its repeated use of the phrase, chose to employ a term of art and intended the term would have a consistent meaning throughout the statute. We agree with the ALC's reasoning, as it closely follows the "normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning." *Sullivan v. Stroop*, 496 U.S. 478, 484 (1990) (quoting *Sorenson v. Sec'y of Treasury*, 475 U.S. 851, 860 (1986)). This is bolstered by the fact that "tax exemption statutes are strictly construed against the taxpayer." *Se. Kusan, Inc. v. S.C. Tax Comm'n*, 276 S.C. 487, 489, 280 S.E.2d 57, 58 (1981).

Finally, in 2021, the General Assembly revised the definition of "member of my household" to explicitly encompass an owner occupant's spouse for the entirety of subsection (c)(2)(ii) instead of just part B. *See* Act No. 56, 2021 S.C. Acts ___, ___ (§§ 1.A, 1.B). We acknowledge that changes to statutes often indicate the General Assembly wished to alter the law's meaning. Still, applying that principle in Oakley's favor would lead us directly into conflict with the principles outlined above: the statute's purpose, its history, the rule that parts of a statute should be given effect, and the rule that common terms used throughout a statute are read to have a common meaning.

For these reasons, we hold the ALC correctly granted the Assessor's motion for summary judgment.

**AFFIRMED.**[2]

**KONDUROS and HILL, JJ., concur.**

---

[2] We decide this case without oral argument pursuant to Rule 215, SCACR.