# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Colonial Pipeline Company, Respondent,

v.

South Carolina Department of Revenue, Abbeville County, Anderson County, Greenville County, Aiken County, Laurens County, and York County, Appellants.

Appellate Case No. 2021-000219

_____

Appeal From The Administrative Law Court
Ralph King Anderson, III, Administrative Law Judge

_____

Opinion No. 6072
Heard March 5, 2024 – Filed July 17, 2024

_____

**REVERSED**

_____

Walter Hammond Cartin and Jeffrey Evan Phillips, both of Parker Poe Adams & Bernstein, LLP, of Columbia, and Joshua Madison Tyler Felder, of Parker Poe Adams & Bernstein, LLP, of Greenville, all for Appellants Aiken County and Laurens County. Michael Enrico Kozlarek, of Kozlarek Law, LLC, and Kimila Lynn Wooten, of Kenison Dudley & Crawford, LLC, both of Greenville, for Appellants Abbeville County, Anderson County, Greenville County, and York County. Marcus Dawson Antley, III, and Jason Phillip Luther, both of Columbia, for Appellant South Carolina Department of Revenue.

Burnet Rhett Maybank, III, of Adams and Reese, LLP, of Columbia, for Respondent.

---

**THOMAS, J.:**  The South Carolina Department of Revenue (DOR) and Aiken, Laurens, Abbeville, Anderson, Greenville, and York Counties (the Counties[1]) (collectively, Appellants) appeal the order of the Administrative Law Court (ALC) granting a pollution control property tax exemption to Respondent Colonial Pipeline Company (Colonial), arguing the ALC erred in (1) granting the exemption to a transportation company that is not a production plant; (2) failing to appropriately discount the exemption based on the dual purpose provision; (3) limiting the scope of the contested case hearing; and (4) finding Colonial was entitled to the exemption despite the failure of the South Carolina Department of Health and Environmental Control (DHEC) to determine the issue.  We reverse.

## FACTS

This matter involves the interpretation of a property tax exemption for pollution control devices claimed by Colonial under the South Carolina Constitution and Section 12-37-220 of the South Carolina Code (2014).  The constitutional provision exempts from property tax "all facilities or equipment of *industrial plants* which are designed for the elimination, mitigation, prevention, treatment, abatement, or control of water, air[,] or noise pollution."  S.C. Const. art. X, § 3(h) (emphasis added).  The statutory provision exempts from property tax "all facilities or equipment of *industrial plants* which are designed for the elimination, mitigation, prevention, treatment, abatement, or control of water, air, or noise pollution, both internal and external, required by the state or federal government and used in the conduct of their business."  S.C. Code Ann. § 12-37-220(A)(8) (2014) (emphasis added).  The primary issue is whether Colonial, a company that transports petroleum products via more than 500 miles of pipeline[2] across South Carolina, is an industrial plant, which would entitle it to the exemption.

The parties stipulated to the majority of the facts.  Colonial is a pipeline company that transports refined petroleum, jet fuel, gasoline, diesel, heating oil, kerosene, and blend stocks through underground pipes in South Carolina.  These products

---

[1] Aiken County and Laurens County successfully moved to intervene and filed briefs.  Abbeville County, Anderson County, Greenville County, and York County, also intervenors, filed separate briefs.  We refer to all counties as "the Counties" unless specified.

[2] Of the 515 miles of pipeline Colonial has in South Carolina, 203 are mainline miles while others are abandoned, delivery line, or stub line miles.

can interface with one another and create a fluid called "Transmix."  Transmix is a fluid that does not meet the specifications for a fuel that can be used or sold for use.  Each product that combines to create Transmix can be separated into a once again saleable product.  At least 90% of each product transported by Colonial is of the same specification and quantity when it enters the pipeline as it is when it leaves the pipeline.  Colonial does not own the products it transports.

Although Colonial has property throughout the state, the property at issue in this matter is located in the Counties.  Colonial also has tank farms, delivery facilities, and booster stations in South Carolina.  Its two tank farms in South Carolina—one in Belton and the other in Spartanburg—receive and store product from the transmission pipeline and pump the product to individual truck terminals.  Colonial's delivery stations in South Carolina are located at the tank farms and deliver product on a transmission line to a truck terminal.  Colonial has three booster stations in South Carolina—one in Anderson, one in Simpsonville, and another in Gaffney.  The booster stations push the product through the pipeline.

DOR received Colonial's 2017 application for an ad valorem tax exemption based on section 12-37-220(A)(8).  In its letter and accompanying application, Colonial reported a pollution control exemption on pipe coatings, cathodic protection, automatic shut-off valves, wastewater pollution control equipment, storm water pollution control, secondary containment, and tank internal/external floating roofs.  Based on its evaluation,  DOR granted the exemption application as to wastewater pollution control equipment, storm water pollution control, secondary containment, and tank internal/external floating roofs for property tax year 2017 but denied Colonial's exemption application as to pipe coatings, cathodic protection, and automatic shut-off valves.[3]

Colonial protested the proposed assessment for 2017.  DOR notified the Counties of Colonial's appeal of the 2017 assessment.  DOR forwarded the 2017 exemption application information to DHEC for investigation into whether Colonial's claimed property, specifically, pipe coatings, cathodic protection, and automatic shut-off valves, qualified as pollution control property, pursuant to section 12-37-220(A)(8).  DHEC responded that federal agencies, like the United States

[3] DOR initially approved the exemption for the first four items (wastewater control, stormwater control, secondary containment, and floating roofs) in both 2017 and 2018.  DOR's initial rejection of the exemption of the last three items (pipe coatings, cathodic protection, automatic shutoff valves) was on the basis that Colonial was not an industrial plant.

Department of Transportation ("USDOT"), regulate pipelines, and DHEC lacked the authority to permit, inspect, or enforce pipeline operations.

In its 2018 application for an ad valorem tax exemption based on section 12-37-220(A)(8), Colonial claimed the same property as pollution control property on its 2017 and 2018 property tax returns. DOR requested DHEC investigate Colonial's property to determine the portion of the property that qualified as pollution control property pursuant to section 12-37-220(A)(8). DOR denied Colonial's exemption application as to pipe coatings, cathodic protection, and automatic shut-off valves but granted the exemption application as to wastewater pollution control equipment, storm water pollution control, secondary containment, and tank internal/external floating roofs for the 2018 property tax year. Colonial again protested.

DOR forwarded the 2018 exemption application for all seven claimed items to DHEC for investigation into whether Colonial's claimed property qualified as pollution control property, pursuant to section 12-37-220(A)(8). DHEC submitted a letter to DOR clarifying that the pipe coatings, cathodic protection, and automatic shut-off valves for property tax years 2017 and 2018 can be described as pollution control equipment. DHEC again noted that federal agencies, like USDOT, regulate pipelines, and DHEC lacks authority to permit, inspect, or enforce pipeline operations.

In November 19, 2018, DOR issued its Determination, denying the exemptions for all of the categories of equipment. Colonial timely requested a contested case hearing on December 5, 2018. On September 4, 2019, DOR clarified through its Second Amended Prehearing Statement that Colonial does not qualify for an ad valorem property tax exemption pursuant to section 12-37-220(A)(8) (2014) for *any* of its claimed property—including property for which it initially granted the exemption.

DOR's denial of Colonial's 2017 and 2018 applications for pollution control tax exemptions found Colonial was "not a facility or equipment of an industrial plant" and was "more similar to railroads and delivery companies and not a manufacturer whose plants would qualify as industrial plants." Colonial filed a request for a contested case hearing with the ALC. The Counties moved to intervene, which the ALC granted. The parties filed prehearing statements and stipulated to the operative facts. All parties filed motions for summary judgment, which were denied after a hearing. The ALC also denied DOR's motion to amend its prehearing statement as well as DOR's and the Counties' motions to alter or amend.

At the contested case hearing, Colonial maintained its system of pipelines, tank farms, delivery facilities, and booster stations constituted an industrial plant for purposes of the pollution control tax exemption. It also argued numerous of the claimed exemptions qualified as pollution control equipment. Colonial provided testimony that all of the items claimed for exemption were used primarily for business purposes, were designed for pollution control by abating or eliminating water or air pollution, and were required by federal law.

Taylor Ingram, the Utility Assessment Coordinator for DOR, testified he had appraised utilities for property tax purposes. He explained that pipelines and railroads, including Colonial, were assessed at 9.5 percent tax rate rather than the 10.5 percent rate for utilities. He testified he initially denied Colonial the exemption in part to get guidance from DHEC. DHEC then concluded it was not its "area of expertise" and suggested DOR "reach out to DOT" for classification. Ingram acknowledged DHEC also stated, "the listed technologies, corrosion protection, pipeline coatings, [and] shear valve[s,] can be fairly described as pollution control equipment." He admitted the utility companies in South Carolina, including SCE&G, annually claimed hundreds of millions of dollars of pollution control exemptions. He opined the qualifier to obtain the exemption was whether the device claimed was "a facility or equipment of an industrial plant." He acknowledged that Colonial met the statutory requirements that claimed devices be "used in the conduct of [Colonial's] business" and "required by the state or federal government." *See* S.C. Code Ann. $ 12-37-220(A)(8) (2014).

At the close of the evidence, Colonial argued its pipelines, substations, tank farms, and other auxiliaries constituted an "industrial plant." DOR argued it used unit valuation to view the pipeline as a whole without "zoom[ing] in on th[o]se booster stations or tank farms" to find Colonial was not an industrial plant. DOR maintained if it looked separately at the tank farms, for instance, then Colonial would not receive the lower, 9.5 percent assessment rating. The Counties argued the ALC should apply a narrow construction of the term "industrial plant," and under a narrow interpretation, Colonial did not meet the requirements needed for the exemption; the federal government defined Colonial as a transportation company and a federal regulation required industrial production or output; and the exemption statute predicated DOR approval of an exemption on an affirmative determination by DHEC, which did not occur here.

The ALC issued its first final order, finding it necessary to view Colonial as a whole. The ALC determined the tank farms, pipelines, and pump stations,

working as a whole, constituted an industrial plant.  It found this approach similar to DOR's unit valuation method for pipeline companies, which values the business as a whole rather than considering individual pieces.  The ALC further concluded the disputed cathodic protection equipment, pipeline coatings, and automatic shut-off valves met the remaining elements required to satisfy the statute as they were designed for the elimination, mitigation, prevention, treatment, abatement, or control of water, air, or noise pollution; required by state and federal government; and used in the conduct of Colonial's business.  However, "applying the dual use provision of the exemption," the ALC concluded the exemption was "not justified for the pipeline coatings because the coatings serve a dual business use without a calculable value differential, . . . [whereas] the preponderance of the evidence did not show the cathodic protection and automatic shutoff valve have a use other than pollution control and the full value of this equipment qualifies for the exemption."

The Counties and Colonial filed motions to reconsider.  The ALC rescinded its order and issued an amended final order.  In its amended final order, the ALC found all three disputed components met the statutory requirements for the exemption as they were (1) facilities and equipment of an industrial plant; (2) designed for the elimination, mitigation, prevention, treatment, abatement, or control of water, air, or noise pollution; (3) required by state or federal government; and (4) used in the conduct of Colonial's business.  Contrary to the prior order, the ALC found the dual-purpose provision of the exemption did not apply; therefore, the exemption was justified for the pipeline coatings in addition to the cathodic protection equipment and automatic shut-off valves.  This appeal followed.

**STANDARD OF REVIEW**

"Upon exhaustion of his prehearing remedy, a taxpayer may seek relief from [DOR's] determination by requesting a contested case hearing before the Administrative Law Court."  S.C. Code Ann. § 12-60-460 (2014).  "In an appeal from the decision of an administrative agency, the Administrative Procedures Act provides the appropriate standard of review."  *Original Blue Ribbon Taxi Corp. v. S.C. Dep't of Motor Vehicles*, 380 S.C. 600, 604, 670 S.E.2d 674, 676 (Ct. App. 2008).  The standard of review provided in the Act is as follows:

> The review of the administrative law judge's order must be confined to the record.  The court may not substitute its judgment for the judgment of the administrative law judge as to the weight of the evidence on questions of

fact.  The court of appeals may affirm the decision or remand the case for further proceedings; or, it may reverse or modify the decision if the substantive rights of the petitioner have been prejudiced because the finding, conclusion, or decision is:

(a) in violation of constitutional or statutory provisions;

(b) in excess of the statutory authority of the agency;

(c) made upon unlawful procedure;

(d) affected by other error of law;

(e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

S.C. Code Ann. § 1-23-610(B) (Supp. 2023).

"The decision of the [ALC] should not be overturned unless it is unsupported by substantial evidence or controlled by some error of law."  *Original Blue Ribbon Taxi Corp.*, 380 S.C. at 604, 670 S.E.2d at 676.  This court "may reverse or modify the decision only if the appellant's substantive rights have been prejudiced because the decision is clearly erroneous in light of the reliable and substantial evidence on the whole record, arbitrary or otherwise characterized by an abuse of discretion, or affected by other error of law."  *SGM-Moonglo, Inc. v. S.C. Dep't of Revenue*, 378 S.C. 293, 295, 662 S.E.2d 487, 488 (Ct. App. 2008).

## LAW/ANALYSIS

### A. Exemption - Industrial Plant

DOR argues the ALC erred by granting the exemption for facilities and equipment of an industrial plant, which must engage in production, to a transportation company that does not have a plant or produce anything.  We agree.

DOR first argues Colonial acknowledges that it does not engage in production and the exemption applies only to manufacturers or other entities engaged in production. DOR next argues the plain meaning of the exemption is read in the first line of the statutory and constitutional provisions: it applies to "facilities or equipment of industrial plants" and Colonial has no industrial plant; therefore, there are no facilities or equipment to which the exemption would apply. DOR maintains that South Carolina law treats companies engaged in production differently than those not engaged in production by utilizing different tax rates and because Colonial is not taxed as a manufacturer, it should not receive an exemption for manufacturers. Furthermore, DOR argues Colonial is not a utility providing a product such as electricity; thus, it is not entitled to an exemption as a utility. DOR argues the exemption instructs DHEC to investigate "the property of any **manufacturer** or company" and every manufacturer would be a company; thus, the Legislature must have meant to limit the exemption to manufacturers because it used more specific terminology including transportation companies in other tax statutes. Finally, DOR argues the ALC erred in not strictly construing the exemption against Colonial.

"What a legislature says in the text of a statute is considered the best evidence of the legislative intent or will." *S.C. Dep't of Soc. Servs. v. Boulware*, 422 S.C. 1, 8, 809 S.E.2d 223, 226 (2018) (quoting *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000)). "In interpreting a statute, the court will give words their plain and ordinary meaning[ ] and will not resort to forced construction that would limit or expand the statute." *State v. Johnson*, 396 S.C. 182, 188, 720 S.E.2d 516, 520 (Ct. App. 2011). "The language of a tax exemption statute must be given its plain, ordinary meaning and must be strictly construed against the claimed exemption." *Home Med. Sys., Inc. v. S.C. Dep't of Revenue*, 382 S.C. 556, 564, 677 S.E.2d 582, 587 (2009). "Th[e] rule of strict construction [of a tax exemption statute] simply means that constitutional and statutory language will not be strained or liberally construed in the taxpayer's favor." *CFRE, LLC v. Greenville Cnty. Assessor*, 395 S.C. 67, 74, 716 S.E.2d 877, 881 (2011) (quoting *Se. Kusan, Inc. v. S.C. Tax Comm'n*, 276 S.C. 487, 489, 280 S.E.2d 57, 58 (1981)). "It does not mean that [the appellate court] will search for an interpretation in [DOR]'s favor where the plain and unambiguous language leaves no room for construction." *Id.* at 74-75, 716 S.E.2d at 881 (alteration in original).

We are cognizant of the recent United States Supreme Court decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. ——, 2024 WL 3208360 (June 28, 2024), which overruled precedent requiring a reviewing court "to defer to 'permissible' agency [interpretations of the statutes those agencies administered,]" even when a

reviewing court might read the statute differently, if "'the statute [was] silent or ambiguous with respect to the specific issue' at hand." *Id.* at *2, *22 (quoting *Chevron U. S. A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984)). The Court in *Loper* concluded that "[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority." *Id.* at *22. The Court explained independent judicial judgment is part of the "solemn duty" of courts to declare what the law is. *Id.* at *9. The Court reminded us that "[t]he Framers appreciated that the laws judges would necessarily apply in resolving those disputes would not always be clear, but envisioned that the final 'interpretation of the laws' would be 'the proper and peculiar province of the courts.'" *Id.* at *1 (quoting The Federalist No. 78, at 525 (A. Hamilton)). The Court overruled *Chevron*, which "demand[ed] that courts mechanically afford *binding* deference to agency interpretations" while leaving in place *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), which endorses "exercising independent judgment . . . consistent with the 'respect' historically given to Executive Branch interpretations." *Id.* at *15, *22.

Mindful of these rules governing statutory construction, we first review section 12-37-210 of the South Carolina Code (2014), which taxes "[a]ll real and personal property in this State" subject to exemptions. The exemption at issue, the Pollution Control Exemption, provided statutorily by section 12-37-220(A)(8)(2014) of the South Carolina Code, exempts from taxation:

> all facilities or equipment of industrial plants which are designed for the elimination, mitigation, prevention, treatment, abatement, or control of water, air, or noise pollution, both internal and external, required by the state or federal government and used in the conduct of their business.

Our South Carolina Constitution also provides an exemption for "all facilities or equipment of industrial plants which are designed for the elimination, mitigation, prevention, treatment, abatement or control of water, air[,] or noise pollution." S.C. Const. art. X, § 3(h).

DOR's final determination states:

> To qualify for the pollution control exemption, the claimed property must be: 1) facilities or equipment of industrial plants; 2) designed for the elimination,

mitigation, prevention, treatment, abatement, or control of water, air, or noise pollution; 3) required by state or federal government; and 4) used in the conduct of their business. Here, the claimed property fails the first element because the claimed property is not a facility or equipment of an industrial plant.

DOR and the Counties do not contest that Colonial meets the second, third, and fourth requirements; rather, they argue Colonial does not meet the definition of "industrial plant."

The parties raise numerous dictionary definitions, regulatory references, and tax statutes in arguing the meaning of the term, "industrial plant," which is not defined in South Carolina's Revenue Procedures Act. Merriam-Webster's Online Dictionary does not include the term, "industrial plant," and the ALC looked to the definition of the term "plant," which is defined as:

a: the land, buildings, machinery, apparatus, and fixtures employed in carrying on a trade or an industrial business;
b: a factory or workshop for the manufacture of a particular product also: POWER PLANT;
c: the total facilities available for production or services;
d: the buildings and other physical equipment of an institution.

https://www.merriam-webster.com/dictionary/plant (last visited July 2, 2024). The ALC found Merriam Webster's multiple definitions "illustrate[d] the difficulty of interpreting the meaning" and it was required to determine which definition our Legislature most likely intended to apply. The ALC found the definition in section (a) was the most likely in part because it incorporated the adjective "industrial."

The ALC next turned to the definition in Merriam-Webster of "industry"[4], which is defined as:

a: manufacturing activity as a whole | the nation's *industry*;

----

[4] The ALC looked to the first definition of "industrial," which is defined as "of or relating to industry." https://www.merriam-webster.com/dictionary/industrial (last visited July 2, 2024).

b: a distinct group of productive or profit-making enterprises | the banking *industry*;
c: a department or branch of a craft, art, business, or manufacture *especially* : one that employs a large personnel and capital especially in manufacturing;
d: systematic labor especially for some useful purpose or the creation of something of value[.]

https://www.merriam-webster.com/dictionary/industry (last visited July 2, 2024). The ALC found the terms in sections (a) and (b) were too broad; section (c) was too narrow; and section (d), although broad, was the most likely to apply to the statute at issue. We find the ALC strained to find a definition of the meaning, "industrial plant" beyond what the Legislature intended.

Title 42 of the United States Code defines "industrial plant" as "any fixed equipment or facility which is used in connection with, or as part of, any process or system for industrial production or output." 42 U.S.C. § 6326(5) (2012). In our view, this statutory definition provides a plain and ordinary meaning for the term "industrial plant" in that it contemplates some production or output. *See Home Med. Sys., Inc.*, 382 S.C. at 564, 677 S.E.2d at 587 ("The language of a tax exemption statute must be given its plain, ordinary meaning and must be strictly construed against the claimed exemption."); *Liberty Mut. Ins. Co. v. S.C. Second Inj. Fund*, 363 S.C. 612, 621, 611 S.E.2d 297, 301 (Ct. App. 2005) ("A statute should be given a reasonable and practical construction consistent with the purpose and policy expressed in the statute."). We find support for our interpretation in the broader constitutional and regulatory scheme. Article X, Section 1 of the South Carolina Constitution distinguishes, for tax assessment purposes, transportation companies from manufacturing and utility companies by providing the lower assessment ratio, 9.5 percent for transportation companies compared to 10.5 percent for manufacturers. In addition, Regulation 117-1700.4 of the South Carolina Code of Regulations (2012) defines "transportation companies" to include "pipeline companies."[5] The ALC rejected these factors, finding "the disparate assessment ratios [did] not capture the legislative purpose of the pollution control exemption." We agree the legislative purpose of the pollution control exemption is presumably to compensate those who are required to install equipment to prevent

---

[5] We agree with the ALC that Colonial's reliance on the fact that it would qualify for "industrial" bonds under the statutory scheme has no application here.

or minimize pollution.  However, we find the ALC did not apply the plain and ordinary meaning of the term industrial plant.  Thus, we reverse.[6]

## B.  Remaining Issues

DOR also argues the ALC erred in failing to reduce the value of the exemption based on the dual use of the property if Colonial is entitled to the exemption. Aiken and Laurens Counties additionally argue the ALC erred in finding Colonial qualified for the exemption when DHEC did not determine the issue.  In light of our disposition of the exemption issue, we decline to address the remaining issues. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (declining to address the remaining issues because its resolution of a prior issue was dispositive).

## CONCLUSION

For the foregoing reasons, the order on appeal is

**REVERSED.**

**MCDONALD and VERDIN, JJ., concur.**

---

[6] We also find the ALC erred in denying DOR's motion to amend and in limiting the scope of the contested case hearing to only three types of Colonial's property. *See* SCALC Rule 18 ("Any document filed with the Court may be amended at any time upon motion and for good cause shown, unless the amendment would prejudice any other party in the presentation of its case.").  In finding the ALC erred in denying DOR's motion to file the Second Amended Prehearing Statement, we note DOR's position of denying the exemption to all claimed property was known to Colonial prior to Colonial filing its request for a contested case hearing. Essentially, Colonial was contesting preliminary findings after learning what the final findings were.  We disagree with the ALC that Colonial would be prejudiced by allowing the amendment.  Based on this and our finding that Colonial is not entitled to the exemption because it cannot satisfy the predicate requirement that its devices are "facilities or equipment of industrial plants," we find it unnecessary to separately address the seven claimed property types.