# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Duke Energy Corporation, Appellant,

v.

South Carolina Department of Revenue, Respondent.

Appellate Case No. 2020-001542

Appeal From The Administrative Law Court
Ralph King Anderson, III, Administrative Law Judge

Opinion No. 6107
Heard October 9, 2024 – Filed March 26, 2025

## REVERSED

Lawrence Michael Hershon, of The Hershon Law Firm, P.A., of Charleston; Eric S. Tresh and Maria M. Todorova, both of Eversheds Sutherland (US) LLP, of Washington, D.C., all for Appellant.

Charles A. Harris, Jr., of Leesville, and Jason Phillip Luther, of Columbia, both of the South Carolina Department of Revenue, for Respondent.

C. Mitchell Brown, of Columbia; and John C. von Lehe, Jr., and Bryson M. Geer, both of Charleston, all of Nelson Mullins Riley & Scarborough, LLP, for Amicus Curiae The South Carolina Chamber of Commerce.

**WILLIAMS, C.J.:** Duke Energy Corporation (Duke) appeals the administrative law court's (the ALC) order finding the investment tax credit under section 12-14-60(G) of the South Carolina Code (2014) is limited to a five-million-dollar total for all tax years. We reverse.

**FACTS/PROCEDURAL HISTORY**
Section 12-14-60(A)(1) states, "There is allowed an investment tax credit against the tax imposed pursuant to [the South Carolina Income Tax Act] *for any taxable year* in which the taxpayer places in service qualified manufacturing and productive equipment property." S.C. Code Ann. § 12-14-60(A)(1) (2014) (emphasis added). At issue is subsection (G), which places a five-million-dollar limit on the amount of tax credit entities can claim. *See* § 12-14-60(G) ("The credit allowed by this section for investments made after June 30, 1998, is limited to no more than five million dollars for an entity subject to the license tax as provided in [s]ection 12-20-100.").

The South Carolina Department of Revenue (the Department) audited Duke's tax returns for tax years 1996 through 2014 to determine the amount of tax credit Duke claimed under the statute. On July 19, 2018, the Department issued a Notice of Adjustment that disallowed $19,850,727 in tax credits claimed by Duke for tax years 2011 through 2014. The Notice of Adjustment asserted the Department's interpretation that subsection (G) sets forth a five-million-dollar lifetime limit, rather than an annual limit, for tax credits claimed pursuant to subsection (A)(1). Duke protested the adjustment and on April 26, 2019, the Department issued a department determination affirming its decision. Subsequently, Duke requested a contested case hearing. On July 31, 2020, both parties filed cross-motions for summary judgment, and the ALC conducted a hearing in September 2020.

At the hearing, Duke averred the Department's historic interpretation of the statute was that the tax credit limitation applied annually. Duke proposed multiple arguments in support of its position, namely that the ALC should read the statute as a whole, the theory of legislative acquiescence, the purpose of the statute, and a prior attempt by the Legislature to clarify the statute. The Department argued the statute plainly sets forth a lifetime limitation of five million dollars.

The ALC found the statute ambiguous and resolved the ambiguity against Duke, construing the tax credit limitation to be a five-million-dollar lifetime limit. Additionally, the ALC found the Department did not violate any rule-making procedures or the Taxpayer's Bill of Rights when revising the credit form to reflect

a lifetime, rather than annual, limit on the tax credit, and that the defenses of unjust enrichment and estoppel were improper. This appeal followed.

**ISSUE ON APPEAL**

Did the ALC err in interpreting section 12-14-60(G) as a lifetime limitation?

**STANDARD OF REVIEW**

> The court of appeals may affirm the decision or remand the case for further proceedings; or, it may reverse or modify the decision if the substantive rights of the petitioner have been prejudiced because the finding, conclusion, or decision is:
>
> (a) in violation of constitutional or statutory provisions;
> (b) in excess of the statutory authority of the agency;
> (c) made upon unlawful procedure;
> (d) affected by other error of law;
> (e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
> (f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

S.C. Code Ann. § 1-23-610(B) (Supp. 2024). "As to questions of fact, [this c]ourt may not substitute its judgment for the ALC's judgment when weighing the evidence." *Deerfield Plantation Phase II B Prop. Owners Ass'n v. S.C. Dep't of Health & Env't Control*, 414 S.C. 170, 175, 777 S.E.2d 817, 819 (2015).

**LAW/ANALYSIS**

Duke sets forth multiple arguments in support of its contention that the ALC erred in interpreting section 12-14-60(G) as a five-million-dollar lifetime limitation. Duke argues the ALC erred in finding the statutory language ambiguous and contends the statute clearly provides for an annual limitation. In the alternative, Duke avers that if section 12-14-60(G) is ambiguous, it should be construed as an annual limitation under the theory of legislative acquiescence because for fifteen years, the Department used tax form SC SCH. TG-11 which required taxpayers to apply the tax credit on an annual basis. Additionally, Duke contends the ALC

misapplied the principles of statutory construction.  We hold the statute is unambiguous and sets forth an annual limit.

"The cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature."  *Sloan v. Hardee*, 371 S.C. 495, 498, 640 S.E.2d 457, 459 (2007).  "When a statute's terms are clear and unambiguous on their face, there is no room for statutory construction and a court must apply the statute according to its literal meaning."  *Id.*  "Words must be given their plain and ordinary meaning without resort to subtle or forced construction to limit or expand the statute's operation."  *Id.* at 499, 640 S.E.2d at 459.  "Under the plain meaning rule, it is not the court's place to change the meaning of a clear and unambiguous statute."  *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000).  "However, 'the statute must be read as a whole and sections which are part of the same general statutory law must be construed together and each one given effect.'"  *CRFE, LLC v. Greenville Cnty. Assessor*, 395 S.C. 67, 74, 716 S.E.2d 877, 881 (2011) (quoting *S.C. State Ports Auth. v. Jasper Cnty.*, 368 S.C. 388, 398, 629 S.E.2d 624, 629 (2006)).  "We therefore should not concentrate on isolated phrases within the statute."  *Id.*  "Instead, we read the statute as a whole and in a manner consonant and in harmony with its purpose."  *Id.*

"[If] the plain language of the statute lends itself to two equally logical interpretations, [appellate courts] must apply the rules of statutory interpretation to resolve the ambiguity and to discover the intent of the General Assembly."  *Kennedy v. S.C. Ret. Sys.*, 345 S.C. 339, 348, 549 S.E.2d 243, 247 (2001).  "Where the language of an act gives rise to doubt or uncertainty as to legislative intent, the construing court may search for that intent beyond the borders of the act itself."  *Id.*

"In conjunction with these rules of statutory construction, we must also be cognizant of our policy to strictly construe a tax credit against the taxpayer as it is a matter of legislative grace."  *Centex Int'l, Inc. v. S.C. Dep't of Revenue*, 406 S.C. 132, 140, 750 S.E.2d 65, 69 (2013).  "This rule of strict construction simply means that constitutional and statutory language will not be strained or liberally construed in the taxpayer's favor."  *Se.-Kusan, Inc. v. S.C. Tax Comm'n*, 276 S.C. 487, 489, 280 S.E.2d 57, 58 (1981).  "It does not mean that we will search for an interpretation in the Tax Commission's favor where the plain and unambiguous language leaves no room for construction."  *Id.*  "Only when the literal application of a statute produces an absurd result will we consider a different meaning."  *Id.* at 489–90, 280 S.E.2d at 58.

Subsection (G) does not contain any time-specific language to describe the limit of tax credits available to an eligible entity. However, subsection (G) refers to the credit "allowed by [section 12-14-60]" as described in subsection (A)(1), which explicitly defines the credit as being available in "any taxable year." Furthermore, the credit applies against the tax imposed pursuant to Chapter 6 of Title 12, which governs a yearly income tax. *See* S.C. Code Ann. § 12-6-530 (2014) ("An income tax is imposed annually at the rate of five percent on the South Carolina taxable income of every corporation . . . transacting, conducting, or doing business within this State or having income within this State . . . ."). Thus, absent language providing for a lifetime limitation, we find a credit against a yearly tax is claimable in any taxable year in which the statutory requirements are met.

Additionally, the tax credit was designed to "revitalize capital investment in this State, primarily by encouraging the formation of new businesses and the retention and expansion of existing businesses; and (2) . . . promote meaningful employment." S.C. Code Ann. § 12-14-20(1)-(2) (2014). Accordingly, the purpose of the credit is not limited to only the formation or initial employment, rather it contemplates the expansion and retention of business. Moreover, the credit itself is available "for any taxable year in which the taxpayer places in service qualified manufacturing and productive equipment property" and can only be claimed when the taxpayer meets specific requirements (i.e., putting into service the equipment property). § 12-14-60(A)(1). Read together, we find the tax credit and purpose reflect the legislature's intent to encourage continued investment in this State and that as long as the taxpayer meets the requirements, the tax credit can be claimed. A lifetime limit of five million dollars is incompatible with that intent. *See Sloan*, 371 S.C. at 498–99, 640 S.E.2d at 459 ("The cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature."). Furthermore, subsection (D)(1) sets forth a time limit for how far in advance any earned credit can be used. *See* S.C. Code Ann. § 12-14-60(D)(1) (2014) ("Unused credit allowed pursuant to this section may be carried forward for ten years from the close of the tax year in which the credit was earned."). The ten-year carry forward provision further supports that the statutory cap is an annual limit. Therefore, when subsection (G) is read within the statute as a whole, the plain language specifies the limit as annual, not lifetime.

While this court is deferential to an agency's interpretation of its law and policies, the interpretation of the five-million-dollar statutory cap as a lifetime limit contradicts our reading of the statute's plain language. Thus, we must overrule the Department's interpretation. *See Media Gen. Commc'ns, Inc. v. S.C. Dep't of Revenue*, 388 S.C. 138, 149, 694 S.E.2d 525, 530–31 (2010) ("An agency's long-

standing interpretation of a statute is usually entitled to be given deference and should not be overruled by a reviewing court in the absence of cogent reasons, but the interpretation will not be sustained if it contradicts a statute's plain language."). Based on the foregoing, we find the ALC erred in finding the statute was ambiguous.[1]

Accordingly, we find Duke is entitled to $19,850,727 of tax credits it earned for tax years 2011 through 2014. Duke did not exceed the annual five-million-dollar limit for any of the relevant years; thus, it is entitled to these credits, which the Department disallowed under its Notice of Adjustment.

**CONCLUSION**

Accordingly, the ALC's order is **REVERSED.**

**GEATHERS and TURNER, JJ., concur.**

---

[1] We decline to address Duke's remaining arguments regarding legislative acquiescence, prior failed legislation, and misapplied principles of statutory construction. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (ruling it is unnecessary for an appellate court to address remaining issues when its resolution of a prior issue is dispositive).